<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUMMIT TRANSPORT CORP.,<br><br>*Plaintiff*,<br><br>v.<br><br>HESS ENERGY MARKETING, LLC, et. al.,<br><br>*Defendants*. | Civil Action No. 14-5119<br><br>OPINION |

ARLEO, UNITED STATES DISTRICT JUDGE

This matter comes before this Court on Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. No. 15]. For the reasons set forth below, the motion is DENIED.

**I. FACTS**

Plaintiff Summit Transport Corporation ("Plaintiff") sues Hess Corporation ("Hess") and Hess Energy Marketing, LLC ("HEM", and together "Defendants") for violation of an alleged oral joint venture agreement between Hess and the Plaintiff. Plaintiff, a wholesale supplier of fuel oil in New York City, sought to secure a dependable supply of fuel oil for its customers. Compl. ¶¶ 6, 18. Hess, a major global oil company, wanted to be perceived as a significant player in the New York City fuel oil business. Id. ¶ 17. To accomplish these goals, the two companies allegedly entered into an oral joint venture agreement in 1985. Id. ¶ 14.

The agreement permitted Hess to service Plaintiff's valuable long-term retail accounts using distinctive Hess-branded trucks, id. ¶ 19, while Plaintiff continued to develop and expand the customer base. Id. ¶ 21. In exchange, Hess would share profits and losses with Plaintiff,

1

including a percentage of all revenue generated by sales to Plaintiff's fuel oil customers. Id. ¶¶ 19-20, 22.  The joint agreement also provided that Plaintiff would benefit from the financial growth of Hess's energy business that arose from the sale of additional services and products to Plaintiff's customers.  Id. ¶ 29.  Plaintiff continued successfully to build the joint venture, bringing tens of millions of dollars of revenue to Hess.  Id. ¶ 23.

All was not well, however.  Hess insisted Plaintiff share losses, but did not always share profits.  Id. ¶¶ 24-26.  Hess aggressively converted customers to other forms of energy, eroding Plaintiff's originated fuel oil customer base and eventually wresting control of the joint business away from Plaintiff.  Id. ¶¶ 31, 34.  Hess also avoided memorializing the joint venture in writing, while insisting it would do so eventually.  Id. ¶¶ 35-36.  Over time, the venture grew increasingly one-sided.  Id. ¶ 39.

As intended, the servicing by Hess of Plaintiff's roster of fuel oil customers created a public impression that Hess was a dominant player in the New York retail energy sector.  Id. ¶ 33.  After hearing rumors that Hess was planning to sell its retail fuel oil business in New York City, Plaintiff sought confirmation that it would be compensated for its full contribution to the retail fuel oil business.  Id. ¶ 42.  Hess allegedly assured Plaintiff that (1) their relationship was perpetual or at least long-term, (2) Plaintiff would be fully compensated in the event of a sale, and (3) the terms of any sale would ensure Plaintiff continued to receive its share of fuel oil revenues generated from its originated accounts.  Id. ¶ 43.  Plaintiff relied on Hess's promises.  Id. ¶¶ 38-39, 44.

Contrary to its assurances, Hess sold its energy marketing business to HEM.  Id. ¶ 45.  The sale allegedly included all or substantially all of the assets of Hess's energy marketing business in New York City, with material identity between the businesses, including a continuation of upper and middle management, corporate and physical infrastructure, and customer base.  Id. ¶¶ 12-13.

2

Plaintiff was not provided with any compensation for the sale.  Id. ¶ 45.  Shortly following the sale, HEM informed Plaintiff that Plaintiff's involvement in the energy marketing business would be greatly reduced in the near future.  Id. ¶ 47.

Thereafter, Plaintiff sued in New Jersey state court, and Defendants removed to this Court based on diversity.  Defendants now move to dismiss the Complaint on three primary grounds: (1) it fails to articulate a theory of liability for HEM, (2) it inadequately pleads the existence of a joint venture, and (3) the alleged oral contract contravenes the Statute of Frauds.  The Court addresses these arguments in turn.

**II.    STANDARD OF REVIEW**

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**III.   ANALYSIS**

   **A.  HEM Successor Liability**

"The well-established rule under New Jersey law is that successor corporations are legally distinct from their predecessors and do not assume any of the debts or liabilities of the prior entity."

3

Fink v. EdgeLink, Inc., 553 F. App'x 189, 193 (3d Cir. 2014) (citing Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 340 (1981)).  However, there are four exceptions to this rule:

> (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities.

Id.

Defendants move to dismiss the Complaint as to HEM because any alleged joint venture agreement was with Hess, not HEM.  Plaintiff replies that HEM contractually accepted liability for Hess's obligations and also stepped into the shoes of Hess under the "mere continuation" theory of successor liability.

Plaintiff alleges that HEM contractually assumed Hess's debts and liabilities.  Compl. ¶ 11.  That is enough to survive Defendants' motion to dismiss, because contractual assumption of liability invokes the first exception to the general rule against successor liability.  See Fink, 553 F. App'x at 193.  Thus, Plaintiff's allegations against HEM cannot be dismissed wholesale.

### B.  Adequacy of Plaintiff's Joint Venture Allegations

In determining whether a joint venture exists, the Court examines six elements to discern the scope and character of the parties' interrelation.  Wittner v. Metzger articulates these elements:

> There is substantial agreement that some or all of the following elements . . . must be present:
> (A) A contribution by the parties of money, property, effort, knowledge, skill or other asset to a common undertaking;
> (B) A joint property interest in the subject matter of the venture;
> (C) A right of mutual control or management of the enterprise;
> (D) Expectation of profit, or the presence of 'adventure,' as it is sometimes called;
> (E) A right to participate in the profits;
> (F) Most usually, limitation of the objective to a single undertaking or Ad hoc enterprise.

Wittner v. Metzger, 72 N.J. Super. 438, 444 (App. Div. 1962) (citing 2 Williston, Contracts (3d ed. 1959), § 318A at pp. 563-65).

### 1. Right of Management or Control

Defendants argue that the Complaint must be dismissed because Plaintiff has not pled a right of mutual control or management over the alleged joint venture. The Court disagrees.

All reasonable inferences must be drawn in Plaintiff's favor. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Here, the Complaint permits the reasonable inference that Plaintiff had a right of management or control over the alleged joint venture. Hess did not always have control over the joint venture, but instead "[o]ver the course of the decades-long relationship . . . gradually wrested control of the joint energy business . . . away from Summit . . . ." Compl. ¶ 34. A logical inference from Defendants' actions which "gradually wrested control" from Plaintiff is that Plaintiff began with some control in the joint venture. The Complaint also states that the joint venture "became increasingly one-sided" over time, indicating that it was not wholly one-sided at its inception. See id. ¶ 39. Plaintiff's right to management or control can also be inferred from Plaintiff's continuance of "longstanding relationships with additional customers" after entering the joint venture agreement. Id. ¶ 23. This is not a situation where a party simply handed over customers in exchange for a cut of the profits; rather, Plaintiff retained relationships with customers going forward. Indeed, Plaintiff alleges that it had rights to enforce, but forebore from protecting those rights based upon Hess's assurances. Id. ¶ 44.

As alleged, actual control eventually rested in Defendants' hands, but a right of management or control in a joint venture does not require actual control. See Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co., 611 F. Supp. 665, 679 (D.N.J. 1985) ("A joint adventurer may entrust actual control of the operation to his co-adventurer and it still remains a joint venture. Similarly, joint venturers may agree that responsibility for particular tasks

5

shall reside with less than all the venturers.") (quotation marks and internal citation omitted). Here, Plaintiff has adequately alleged a right to management or control over the joint venture which was eroded over time by Hess's intentional misconduct.

### 2. Financial Terms and Meeting of the Minds

Defendants argue that Plaintiff does not allege the specific financial terms of the joint venture, so the existence of the joint venture is inadequately pled. Plaintiff replies that it alleges a meeting of the minds and is not required to disclose the precise financial terms of the arrangement at the pleading stage. The Court agrees with Plaintiff.

The Court reviews the Complaint for plausibility and here finds Plaintiff's claims meet that low threshold. Though Plaintiff has not articulated the precise percentage the parties agreed upon, it plausibly alleges that such terms were settled. "Hess and Summit worked out a joint venture arrangement pursuant [to which] Summit turned over its valuable long-time retail accounts to Hess . . . ." Compl. ¶ 19. Hess "paid Summit a share of profits purportedly based on a percentage of revenue generated by sales to Summit's fuel oil customers . . . ." Id. ¶ 20. Both Hess and Plaintiff also "agreed that Summit would be paid concomitant additional compensation by Hess to reflect the additional revenue realized by Hess as a result of Summit's efforts." Id. ¶ 22. Finally, this agreement allegedly operated for almost thirty years. Id. ¶ 14.

Defendants' reliance on Material Technologies v. Carpenter Technology Corp., No. 01-2965, 2004 U.S. Dist. LEXIS 28892 (D.N.J. Dec. 14, 2004), is misplaced. On a motion for summary judgment, Material Technologies found a joint venture agreement unenforceable because there was no meeting of the minds. Id. at 24-25. Quite unlike that case, here Plaintiff alleges a joint venture agreement with established terms which continued for almost thirty years, during which time Hess "gradually wrested control" from Plaintiff. Compl. ¶ 34. Also unlike Material Technologies, this case is at the pleading stage. Defendants have not presented the Court with any

6

case which dismisses as inadequately pled a contract or joint venture claim for failure to specify the precise financial terms of the arrangement.

Neither the allegations concerning the right of mutual control or management nor the allegations concerning the specific financial terms of the agreement are deficient as a matter of law. Plaintiff has adequately alleged the existence of a joint venture, so the Court declines to dismiss the case as inadequately pled.[1]

### C. Statute of Frauds

Defendants argue that the alleged oral joint venture agreement could not be performed within a year of its formation in 1985, and so is unenforceable under New Jersey's Statute of Frauds as it existed in 1985. See N.J. Stat. Ann. 25:1-5(e). Plaintiff replies that it is premature to decide whether the claim falls under the Statute of Frauds, the joint venture could be completed within a year, and barring suit under the alleged oral agreement after thirty years of accepted performance would work an inequity on Plaintiff, the performing party. Plaintiff's argument prevails.

Though the Statute of Frauds may be raised in the context of a motion to dismiss, the Court may not dismiss on those grounds unless "it is clear from the face of the complaint or the

---

[1] Many of Defendants' other arguments are ancillary and can be summarily rejected. Defendants' arguments concerning Counts I and II (breach of contract and breach of covenant of good faith and fair dealing, respectively) assume Plaintiff failed adequately to plead a joint venture. For that reason, these arguments fail. Defendants also argue that Plaintiff's estoppel claim (Count IV) is inadequately pled because it simply describes an unkept promise. But Plaintiff alleges more than that—deception made with intent to induce detrimental reliance, which reasonably did induce such reliance. See Compl. ¶¶ 35-44. Count IV is adequately pled. Finally, Defendants argue that Plaintiff's unjust enrichment claim (Count V) should be dismissed because the Complaint admits that Plaintiff was paid some amount. This argument also fails. "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Plaintiff alleges that it sought and received reassurances that it would be compensated in the event of a sale of Hess's energy marketing business. Compl. ¶¶ 41-43. In reliance on Defendant's subsequent assurances, Plaintiff continued to develop the business. Id. ¶ 44. Plaintiff ultimately received no payment for the sale of Hess's energy marketing business. Id. ¶ 45. Uncompensated business development following Hess's reassurances here is sufficient to state a claim for unjust enrichment.

documents attached thereto that the Statute of Frauds presents an insurmountable bar to plaintiff's cause of action." Coastal Grp., Inc. v. Westholme Partners, No. 94-3010, 1996 WL 33545605, at *4 (D.N.J. Oct. 3, 1996).

The Statute of Frauds does not require dismissal of this claim because the Complaint does not allege a joint venture agreement that could not have been fully performed in one year. Defendants point to various language concerning the "perpetual" and "long-term" nature of the commitment alleged in the Complaint. Compl. ¶¶ 46, 48. But this language refers to Hess's assurances made after the existence of the joint venture and, more specifically, after Plaintiff expressed concern about the venture beginning around 2011. Id. ¶¶ 41, 43. Nothing in the Complaint alleges that the agreement could not have been performed within a year or that Hess did not have the ability to fully perform or cancel the agreement within a year.

Even if the parties intended the joint venture to proceed indefinitely, that intent alone does not preclude complete performance within one year. See Nawyn v. Kuchkuda, 43 N.J. Super. 95, 105 (App. Div. 1956) (oral agreement providing for payment of percentage of truck route's revenue did not fall under the Statute of Frauds where no time for performance was fixed in the agreement); Leon v. Kelly, 618 F. Supp. 2d 1334, 1347 (D.N.M. 2008) ("Because the alleged partnership was indefinite and not for a term of years, it could be performed in less than one year's time within the meaning of the Statute of Frauds."). Thus, whether the alleged joint venture agreement could be performed within one year is a question of fact inappropriate for resolution at the pleading stage.

Finally, even if the Statute of Frauds did apply at this stage of the case, the Court would exercise its equitable power to prevent application of the Statute of Frauds here. Courts may decline to apply the Statute of Frauds where such application would itself accomplish a fraud and

8

a party has received the full benefit of another party's performance.  See Graziano v. Grant, 326 N.J. Super. 328, 341 (App. Div. 1999).  Here, the alleged joint venture operated for almost thirty years, during which time Plaintiff consistently performed its duties.  Compl. ¶¶ 14, 23.  The length of performance and acceptance of that performance by Defendant to Defendant's substantial benefit, as alleged in the Complaint, militate against dismissing this case.  Therefore, in equity, the Court declines to apply the Statute of Frauds to dismiss this case at the pleading stage.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.  An appropriate order accompanies this Opinion.

Date: February 27, 2015                             /s/ *Madeline Cox Arleo*
                                                                        **Hon. Madeline Cox Arleo**
                                                                        **UNITED STATES DISTRICT JUDGE**